People of the State of Illinois, Defendant in Error, v. Freeman Brooks, Plaintiff in Error.

Gen. No. 49,533.

First District, Third Division.

October 15, 1964.

474

Edward M. Lupa, of Chicago, for plaintiff in error.

Daniel P. Ward, State's Attorney, of Chicago (Elmer C. Kissane and Robert K. Kelty, Assistant State's Attorneys, of counsel), for defendant in error.

MR. JUSTICE DEMPSEY delivered the opinion of the court.

A jury convicted Freeman Brooks of the murder of Castoria Jones, Jr., and fixed his punishment at 14 years in the penitentiary. A writ of error issued by the Supreme Court to review his conviction ·was transferred to this court.

The defendant, Freeman Brooks, 66 years of age, was a widower who lived alone in a third floor apartment at 4725 Indiana Avenue, Chicago. Lucille Chapman, her eight-year-old daughter, and the man Mrs. Chapman was living with, Castoria Jones, Jr., 29 years of age, occupied an adjacent apartment. Another apartment on the third floor was occupied by Mercedes Lee, a friend of Mrs. Chapman. On July 23, 1961, Brooks shot and killed Jones. At his trial Brooks claimed that he fired in self-defense when he was struck by the younger man.

Two versions of the occurrence were placed before the jury. Lucille Chapman testified that on the afternoon of July 23rd she was giving a birthday party for her daughter and had invited some fourteen other children to the apartment. Mercedes Lee assisted with the party and took care of the children on the rear porch while Mrs. Chapman prepared food in the kitchen. Mrs. Chapman smelled smoke and she and Mrs. Lee went to investigate. They found that the smoke was coming from beneath the door of Freeman Brooks' apartment, and Mrs. Chapman ran down-

stairs to ask her landlord to call the fire department. Mrs. Lee called from upstairs and Mrs. Chapman went back to Brooks' apartment. She asked him what had caused the smoke and he replied that he had been cooking some meat and had fallen asleep. She stated that Brooks was staggering and that there was an odor of alcohol on his breath.

The women returned to her apartment and then Mrs. Lee brought Brooks out to the porch to get some fresh air. When Brooks saw that there was a party going on he went to put on a shirt and while he was gone Jones arrived. Brooks returned, still staggering, and Jones told him that he would have to leave. He did so, but came back a few minutes later carrying a gun and told Mrs. Chapman that he was going to kill her boyfriend. Mrs. Chapman asked Brooks to accompany her into the hall and there attempted to calm him. Jones came into the hall and asked her to fix him a sandwich. As he turned to go back to the Chapman apartment, Brooks shot him. Brooks exclaimed, "Lord, why did I do it?" Mrs. Chapman ran to call the police, stopped a passing squad car and brought the policemen back to the scene. Brooks had left the building but he returned that night and was arrested.

The testimony of Mercedes Lee substantiated that of Mrs. Chapman. She said that after Mrs. Chapman went to call the fire department she took off her shoe and pounded on Brooks' door until he answered. He thanked her for waking him and told her that the meat he was cooking had burned when he fell asleep. She stated that he was staggering, that his breath smelled of alcohol and that he had a bottle of gin in his hand. She took him to the Chapman apartment to get some air. Later Jones arrived and went into the hall and asked Mrs. Chapman to fix dinner for him. Mrs. Lee heard no further conversation because

476

she went to the phonograph to put on another record for the children and then heard a shot. She took the children downstairs, called the police and made Jones as comfortable as possible until they arrived.

A police officer questioned Brooks at the police station after his arrest. He asked Brooks what he did with the gun and was told that he had given it to a man and had not seen it again.

The only witness for the defense was Brooks himself. He testified that he had not been in the Chapman apartment on the day of the shooting. He said that just before the shooting he was preparing to go to church and had gone into his closet to get a shirt and tie; that he was standing on a chair in the closet and was unaware of the smoke from the burning meat until he heard someone at his door. He got a gun from under his pillow since he was afraid of the other tenants on the third floor, and went to the door. He recognized Mrs. Chapman's voice; she was pounding on the door and cursing loudly. He held the gun behind the door and thanked her for coming to tell him about the smoke. He explained that he had been in the closet. She stood in the hall continuing to shout and curse at him, and he told her that he never bothered her and that she should go back to her own place and let him alone.

At that moment Jones came running out of her apartment. He told her to get out of his way so that he could teach this "old so and so" some sense. He pushed past her, cursed Brooks and hit him. At this time Brooks had the gun behind the door but, he said, Jones started to bring his hand up out of his pocket so Brooks shot him. He said that he was frightened because he knew that he could not fight the younger and stronger man.

Brooks testified that after the shooting he ran downstairs to get the landlord to phone the police

since he did not know how to dial a phone himself. As he was going down the stairs he fell, injuring his knee and dropping the gun which he held. He said that there were several men loitering about on the stairs and that one of them must have picked up the gun. He denied telling the police that he gave the gun away. He went to a church nearby where he believed the landlord might be but the deacon there would not allow him to enter, so he went into the alley to sit down and rest his injured knee. He had no watch and didn't know how long he was there; when he returned to his apartment he was arrested. He testified that he did not drink intoxicating liquors and that he had none in his apartment.

██ ██ The first error alleged is that the indictment was insufficient in that its second count did not properly charge the crime of murder. No motion to quash the indictment was made in the trial court and this is the first time objection to it has been made. The second count was not intrinsically defective. Although a judgment, which is based on a fatally defective indictment, is void and may be attacked in a court of review (People v. Fain, 30 Ill App2d 270, 173 NE2d 825), technical objections to an indictment will not be heard for the first time on appeal. People v. Barney, 15 Ill2d 503, 155 NE2d 615. This indictment was composed of two counts, the first of which is not objected to and was itself sufficient to support the judgment. In such circumstances, even if the second count were defective and a motion to quash it had been made, the denial of the motion would not have been reversible error. People v. McCann, 247 Ill 130, 93 NE 100.

██ Next it is contended that the State failed to prove malice aforethought, an essential element to the crime of murder. It is not necessary that the State prove, in order to show malice, a deliberate in-

478

tention to kill. Malice is implied if no considerable provocation appears or where all the circumstances show an abandoned and malignant heart. It is sufficient if, at the time of the shooting, the defendant was actuated by a wanton and wreckless disregard for human life, which itself denotes malice. People v. Jordan, 18 Ill2d 489, 165 NE2d 296. Malice could be inferred if the jury believed that Brooks, ordered out of the Chapman apartment, went back to his own room, got a gun and returned to shoot Jones. Every sane man is presumed to intend all the natural and probable consequences of his own deliberate act. If one voluntarily and willfully does an act, the direct and natural tendency of which is to destroy another's life, the conclusion, in the absence of qualifying facts, is that the taking of the other person's life was intended. Whether a killing is justified under the law of self-defense is a question of fact to be determined by the jury under proper instructions. After the jury has reached its verdict this court will not disturb its finding unless it is either palpably contrary to the evidence or so unreasonable, improbable or unsatisfactory that it justifies entertaining a reasonable doubt of the defendant's guilt. People v. Johnson, 2 Ill2d 165, 117 NE2d 91.

The court is charged with error in permitting the State to ask leading questions of its witness, Mercedes Lee. She testified while she was talking to Brooks at his apartment door she noted that he was staggering and that his breath smelled as though he had been drinking. The state's attorney then asked if she had noticed anything else about Brooks and she answered that she had not. He asked what, if anything, Brooks was holding and if anything else had been said at the time and she gave an answer which was not responsive. He stated that he was refreshing the memory of the witness and, over

defense objections, asked her more than once if anything had been said at the time about drinking. Mrs. Lee said that when Brooks had come to the door he was holding a bottle of gin in his hand and asked her if she drank. The propriety of allowing leading questions is within the sound discretion of the trial court, and is not a ground for reversal unless it appears that this discretion has been abused and has resulted in substantial injury to the defendant. People v. Merritt, 367 Ill 521, 12 NE2d 7. It is difficult to see how the court's ruling caused substantial damage to the defendant. We find no abuse of discretion in this instance.

 It is argued that the trial court should not have instructed the jury on the question of the intoxication of the defendant at the time of the shooting and its effect on his mental ability and his choice of conduct. The question of the defendant's sobriety was clearly before the jury and the court committed no error in instructing the jury on this subject.

 The remaining contentions concern the comments of the state's attorneys in opening and closing arguments. In an opening statement the state's attorney said that Brooks made a statement to Jones that he was going to kill him. The evidence showed that this statement was made to Mrs. Chapman, not to Jones. In his closing argument the state's attorney said that while Mrs. Chapman and Mrs. Lee had corroborated each other, the only testimony presented for the defense was that of Brooks himself. He then remarked that nothing had been heard from the deacon of the church to which Brooks went in search of his landlord. Other improper comments and misstatements of evidence are alleged, but none of them warrants disturbing the judgment of the trial court. As to any misstatements of evidence which might have been made, these were rendered harmless by

repeated cautioning of the jury in both opening and closing arguments that what was being said was not evidence and was to be totally disregarded if it conflicted with the testimony and the evidence at the trial. The court also instructed the jury to confine its consideration to the evidence in the case. As to the comment about the absent deacon, at first glance this might seem improper but when read in context with the full argument it does not appear as if it could have been prejudicial. In order to warrant reversal, the comments complained of must be shown to have resulted in substantial prejudice to the defendant in the eyes of the jury. People v. Stahl, 26 Ill2d 403, 186 NE2d 349. We see nothing of that nature in the statements or arguments made by the state's attorney in this case.

The judgment of the Criminal Court is affirmed.

Affirmed.

SCHWARTZ, P. J. and SULLIVAN, J., concur.