**People of the State of Illinois, Plaintiff-Appellee, v. LeRoy Johnson, Defendant-Appellant.**

**Gen. No. 53,055.**

First District, Third Division.

June 19, 1969.

John J. Crown and Joan M. Hall, of Chicago (Raymond, Mayer, Jenner & Block, of counsel), for appellant.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Thomas J. Immel, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE DEMPSEY delivered the opinion of the court.

LeRoy Johnson was convicted by a jury of murder and sentenced to a term of fourteen to twenty years in the penitentiary. He contends that he was not proven guilty beyond a reasonable doubt, that his case should have been submitted to the jury on the issue of involuntary manslaughter and that his motion to suppress an oral confession was erroneously denied.

Stonewall Edwards was shot and killed by Johnson in the afternoon of August 26, 1966. Earlier in the day Johnson argued with his estranged girl friend, Mrs. Christine Cousins, and left his glasses in her apartment. Later she went to his home to return the glasses, accompanied by her four-year-old son, her mother and Edwards, a family friend. Johnson was standing in the outside doorway of a hall which led to his first-floor apartment. She told him she had brought the glasses back so that he would not have to come to her home.

Mrs. Cousins testified that Johnson, who had been drinking, invited herself, then her mother, and then Edwards into his apartment. They all declined. Edwards said he did not have the time, that he did not like Johnson anyway and for Johnson to stay away from the Cousins home. Johnson said something about killing Edwards. Edwards responded, "Why kill me? Why don't you just fight it out?," dropped his briefcase and took off his coat. Mrs. Cousins hurried away with her child. When she was about 50 feet away she glanced back and saw

150

the two scuffling together with their hands on a gun. She screamed a warning to her mother, ran to a nearby building for help and heard gunshots while she was calling the police.

This was substantiated by her mother, who testified that Johnson said, "I ought to kill you" and Edwards replied, "Why don't you fight me fair?" She also stated that Johnson raised an object, that she reached for the object but ran when her daughter cried out that it was a gun.

The police were there when the women returned to the scene. The policemen testified that when they arrived Johnson was standing in the outside doorway with a gun in his hand. He dropped the gun upon police command. The gun had five cartridges and all of them had been discharged. Four policemen and the two women testified that Edwards' feet or legs were inside the doorway and that the rest of his body was lying on the sidewalk. He had been shot three times.

At the police station Johnson told the officer who questioned him that he quarreled with Edwards and that he removed a revolver from his shirt and shot him.

At his trial Johnson said that the only thing he told the police was that he shot a man. He testified that he was leaning against the doorway when he and Edwards started to argue, that Edwards took off his hat and coat, threw them on the ground, pointed his finger in his face, lunged at him, pushed him into the hallway and started banging his head against the wall. As he felt himself blanking out he reached in his pocket for his gun and shot Edwards. He said that Edwards fell with his body inside the hall—that just part of his head was on the sidewalk.

Johnson argues that the State did not present any evidence to rebut his testimony that he acted in self-defense, and that it failed to prove beyond all reasonable doubt that the killing of Edwards was not justified. In the alternative he argues, for the first time on appeal,

that the killing was voluntary manslaughter. Also for the first time it is contended, in oral argument before this court, that it was the trial court's obligation to give an instruction on voluntary manslaughter although none had been requested at the trial. In support of his first two arguments Johnson points out that he was at his own home, that Edwards had no legitimate reason for being there, that his testimony that Edwards pushed him into the hallway was corroborated by the State's witnesses who said that Edwards' body was partially inside the hallway, and that he did not flee after the shooting.

█ The use of force intended or likely to cause death or great bodily harm is justified only when a person believes such force is necessary to prevent imminent death or great bodily harm to himself and the belief is reasonable. Ill Rev Stats, c 38, § 7–1 (1965). If the belief is unreasonable and death results, the use of such force constitutes voluntary manslaughter. Ill Rev Stats, c 38, § 9–2 (1965).

██ Self-defense is an affirmative defense and, once it is raised by the defendant, the State must prove his guilt beyond a reasonable doubt on this issue as well as on the other elements of murder. Ill Rev Stats, c 38, §§ 3–2(a), (b), 7–14 (1965). Whether a killing is justified under the law of self-defense is a question of fact to be determined by the jury under proper instructions. People v. Brooks, 52 Ill App2d 473, 202 NE2d 265 (1964).

█ The State's evidence was sufficient to sustain the murder verdict. It showed that Johnson spoke of killing Edwards before they started to fight, that he pulled his gun before they scuffled, that the scuffle took place outside the building and that the upper portion of Edwards' body was lying outside the building. The evidence further showed that Edwards was unarmed and that Johnson fired his gun five times and made no claim of self-defense upon being arrested.

152

■ Johnson cites the case of People v. Jordan, 4 Ill 2d 155, 122 NE2d 209 (1954), and argues that the jury could not reject his testimony of the actual shooting since the State offered no evidence of what took place when he and Edwards were alone. The defendant's reliance on this case is misplaced. In Jordan there were no eyewitnesses to the encounter between the defendant and the deceased. The court found that there was only one version of what occurred when the two men met—the defendant's, and that all of the evidence pointed to but one conclusion—that of self-defense. In this situation, the court stated that the defendant's version of the encounter could not be disregarded by a jury. However, the court listed limitations to this rule, one of them being that the defendant's story could be rejected if it was contradicted by other facts and circumstances. This exception is applicable to the present case. The State's evidence contradicted much of Johnson's testimony on material points and thus posed an issue for resolution by the jury.

■ It is the province of a jury to determine the credibility of witnesses and the weight to be given their testimony. A jury's verdict will not be disturbed unless contrary to the evidence or so unreasonable, improbable or unsatisfactory that it justifies a reasonable doubt of the defendant's guilt. People v. Brooks, supra. The State's evidence overcame the defense of justification and fully supported the jury's conclusion that Johnson was guilty of murder.

■ The trial court did not err in not giving the jury instructions and verdicts on voluntary manslaughter. The defendant's arguments that the jury should have been instructed only on manslaughter hinge on his contention that the evidence was insufficient to prove that the crime was murder. First, the State was entitled to instructions on murder because the State's evidence sup-

ported this charge. People v. Matter, 371 Ill 333, 20 NE 2d 600 (1939). Second, while Johnson's testimony raised the issue of voluntary manslaughter as well as self-defense and he would have been entitled to instructions on this issue, he deliberately waived this right. His attorney informed the court that the defendant directed him not to present a manslaughter instruction. Johnson substantiated this and in answer to the court's questions said that he wanted to be tried on the issue of murder only. Third, when the evidence supports a charge of murder, the trial court has no obligation, as the defendant contends he has, to instruct the jury on voluntary manslaughter—in the absence of a request for such instructions. People v. Taylor, 36 Ill2d 483, 224 NE2d 266 (1967); People v. Adams, 36 Ill2d 492, 224 NE2d 252 (1967). Fourth, the defendant failed to preserve these points for review. They were not raised at his trial, were not made in his written motion for a new trial and were not listed among the points and authorities in his principal brief.

The defendant further contends that the trial court committed error in not suppressing his oral statement to the police. He argues that the State did not prove that he was advised of his constitutional rights or that he intelligently and knowingly waived them.

At the hearing to suppress the oral confession the interrogating officer testified that he informed Johnson of his right to remain silent, warned him that anything he might say would be used against him, and advised him that he had the right to an attorney and that an attorney would be furnished if he could not afford one. He said that Johnson responded affirmatively to each explanation and warning. The officer then asked him if he wanted to tell what happened and he gave an oral statement of what had occurred. He was asked but refused to make a written statement. Two other officers corroborated this testimony.

154

The interrogating officer also testified that later the same day Johnson again refused to make a written statement after an assistant State's attorney advised him of his constitutional rights. The two other officers stated they did not see the assistant State's attorney at the station and the State conceded no such questioning occurred.

Johnson testified that he was not warned of his rights. He said that he asked several times to make a telephone call and was refused. This was denied by the interrogating officer.

In Miranda v. Arizona, 384 US 436 (1966), the court held that a person must be made aware prior to custodial interrogation that he has the right to remain silent, that any statement he makes may be used against him and that he has the right to the presence of an attorney, either retained or appointed.

At a hearing to suppress a confession it is the trial judge's responsibility to determine the credibility of witnesses and the competency of the confession and his decision will not be overturned unless it is manifestly against the weight of the evidence. People v. Carter, 39 Ill2d 31, 233 NE2d 393 (1968). Three police officers testified that proper warnings were given the defendant prior to his being questioned. The defendant contends that the interrogating officer's testimony concerning his being questioned by an assistant State's attorney, conceded by the State not to have occurred, casts doubt upon the whole of the officer's testimony. However, two other officers corroborated his testimony that appropriate warnings were given. Their testimony was not impeached in any way and the total evidence is sufficient to support the finding that adequate warnings were given.

A more critical question is raised on the issue of waiver since the defendant made no express statement of waiver. In Miranda the court admonished that where a statement is taken without the presence of an attor-

ney, "a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel." The court said an express statement that an individual is willing to make a statement and does not want an attorney, followed closely by a statement could constitute a waiver, whereas mere silence of the accused after warnings are given, or simply the fact that a confession was in fact eventually obtained will not raise a presumption of waiver. The court added: "The warnings required and the waiver necessary in accordance with our opinion today are, in the absence of a fully effective equivalent, prerequisites to the admissibility of any statement made by a defendant."

 The defendant showed that he was fully aware of his rights by answering "yes" after each warning. He was then asked if he wanted to state what had happened. He gave a brief oral statement of what occurred but refused to put it in writing. His refusal to make a written statement demonstrated an awareness of his rights and the ability to exercise them. It also indicates that he had this knowledge and ability when he gave his oral statement and that he made a knowing, intelligent waiver of rights at that time. Under all these circumstances, a "fully effective equivalent" to an express statement of waiver was made, and the trial court's determination that the waiver was understandingly made was not improper. Cf.: U. S. v. Hayes, 385 F 2d 375 (4th Cir 1967), cert denied, 390 US 1006 (1968).

The judgment is affirmed.

Affirmed.

SULLIVAN, P. J. and SCHWARTZ, J., concur.