THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* WILLIE CLEMENS, Defendant-Appellant.

(No. 55132; ■■■■■■■■

First District—December 13, 1972.

James J. Doherty, Public Defender, of Chicago, (James N. Gramenos, Assistant Public Defender, of counsel,) for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Elmer C. Kissane, James R. Truschke, and Zenon Forowycz, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE BURMAN delivered the opinion of the court:

After a bench trial, the defendant, Willie Clemens, was found guilty of the murder of one Phillip Christopher, and was sentenced to the penitentiary for a term of not less than 20 nor more than 40 years.

On appeal he contends that (1) the court erred in denying a defense motion to suppress the defendant's testimony at the Coroner's inquest; (2) he was not proven guilty beyond a reasonable doubt, and (3) his sentence should be reduced.

Prior to trial, the defendant pleaded not guilty and moved to suppress the statements made by him at the Coroner's inquest. After an evidentiary hearing the motion was denied.

The defendant first contends that his right to counsel was not knowingly and intelligently waived prior to his giving testimony at the Coroner's inquest and that his statement should have been suppressed.

There is no dispute that the defendant was adequately admonished of his rights under *Miranda v. Arizona*, 384 U.S. 436. The principal contention is that the court reporter's shorthand notes indicated only that there was an affirmative response, and that the reporter wasn't certain from his notes whether the defendant or his co-defendant or both responded.

At the hearing on the motion to suppress, Detectives William Looney and Adolph Learas of the Chicago Police Department testified that they arrested the defendant on August 24, 1968. They said they took him to Area 4 Homicide Headquarters. Prior to any interrogation, they advised defendant of his *Miranda* rights. Detective Looney stated that at the conclusion of the warnings, the defendant said, "I have heard this before." Detective Learas stated that the defendant told them that "he knew all this, this had been told to him at some time before in another problem that he had." When Detective Looney asked the defendant if he was willing to make an oral statement, the defendant refused.

Joseph L. Liska, the deputy coroner who conducted the inquest, testified that he read the *Miranda* warnings to the defendant and to a Willie Johnson from a card given to him by the State's Attorney's office. He then asked the defendant if he understood, and the defendant said he did. The witness stated that defendant made an audible affirmative response to the question. He asked the defendant if he wished to testify and the defendant said "yes." He also asked him whether he wanted to tell his story and the defendant said he did. The defendant did not testify at the hearing on the motion to suppress.

James Cronin, the court reporter, testified that his notes showed the words "affirmative response" after Clemens and his co-defendant were advised of their rights. He stated that he couldn't say with certainty whether "affirmative response" referred to an audible or inaudible response. He also stated that it would be difficult to say which defendant made the "affirmative response."

As stated in *People v. Higgins*, 50 Ill.2d 221, 227, 228 N.E.2d 68, 72,

"Once the defendant has been informed of his rights and indicates that he understands those rights, it would seem that his choosing to speak and not requesting a lawyer is sufficient evidence that he knows of his rights and chooses not to exercise them. [Citation.]"

██ In the instant case, defendant's comments to the arresting officers indicated that he was familiar with his rights. A suspect's prior criminal experience tends to support a knowing waiver of rights. (*People v. Hill*, 39 Ill.2d 125, 233 N.E.2d 367.) Moreover, defendant's refusal to give an oral statement to Detectives Looney and Learas after being admonished as to his rights, indicates an awareness of his ability to exercise them. *People v. Johnson*, 112 Ill.App.2d 148, 251 N.E.2d 393.

██ Whether the defendant understood his rights and waived them is a factual question. The trial court's determination should not be reversed unless it is manifestly against the weight of the evidence. (*People v. Johnson*, 112 Ill.App.2d 148, 251 N.E.2d 393.) We have carefully examined the record and conclude that the motion to suppress was properly denied. We have examined the requirements spelled out in *People v. Jackson*, 23 Ill.2d 263, 178 N.E.2d 310, cited by the defense, and find that they were more than adequately met.

The defendant next contends that he was not proven guilty beyond a reasonable doubt. The record reveals that Herbert Gary, age 16, testified that he was with the defendant and others on August 19, 1968, at about 6:00 P.M. He said they drank beer and at about 11:30 P.M. talked about robbing someone. They were in the vicinity of Springfield and Roosevelt Road. They saw a man who appeared to be drunk. (Jack Christopher, brother of the deceased, testified that Phillip Christopher was mentally retarded.) When the deceased came by the alley, the defendant grabbed him around the neck. The witness and another fellow went through the victim's pockets and took a small amount of money. Gary said he saw the defendant stab the deceased with a knife and then throw the body into a basement.

The prosecution, over objection by the defense, read into the record the statement made by the defendant at the Coroner's inquest. In that statement, the defendant said that he was sitting and drinking beer when the deceased came up to him and said, "You're the one." Defendant stood up. Deceased had a knife so the defendant grabbed him, and they wrestled. Finally, the defendant pushed the deceased off and grabbed a pipe. Defendant hit the deceased. The two rolled around with the knife. Defendant said he had the deceased's knife and that he pushed him. Then the deceased rolled over on his back.

The defendant, age 23, took the stand on his own behalf. His testimony

was substantially the same as the statement he gave at the Coroner's inquest. He also stated that the deceased attempted to push the knife into his face, and that during the scuffle the knife somehow struck the deceased near the jaw.

Dr. Edward Shalgos, a physician who specializes in forensic pathology and is associated with the Coroner's office, performed a post-mortem examination of the deceased. He found two broad transverse cut-like lacerations at the back of the head, which in his opinion, were caused by a short slicing instrument. There was a wound in the lower right neck which in his opinion was caused by a sharp cutting instrument. The third relevant wound was in the lowest lateral aspect of the left chest.

■■ The defendant argues that the only evidence offered by the prosecution as to the commission of the crime was the testimony of an accomplice, and that this type of testimony should always be looked upon with the greatest suspicion. Although we agree that the testimony of an accomplice should be received with caution, the uncorroborated testimony of an accomplice is sufficient to sustain a conviction if it satisfies the trier of fact beyond a reasonable doubt. (*People v. Ross*, 41 Ill.2d 445, 244 N.E.2d 608, *cert*. den. 395 U.S. 920.) In *Ross*, the court acknowledged that such testimony is not of the most satisfactory character, yet held that such infirmities go to the weight of evidence or the credibility of the witness, which are matters peculiarly within the province of the trier of fact. The trial judge in the instant case saw and heard the witnesses and observed their demeanor while testifying. In our judgment the evidence is not so improbable as to raise a reasonable doubt of the defendant's guilt.

■■ The defendant also contends that the evidence raised the issue of self-defense and that the State had the burden of proving beyond a reasonable doubt that defendant did not act in self-defense. The issue of self-defense, however, is a question of fact, and a judgment will not be disturbed unless the evidence is so palpably contrary to the verdict or so unreasonably improbable or unsatisfactory as to justify entertaining a reasonable doubt as to the defendant's guilt. (*People v. French*, 3 Ill. App.3d 884, 886, 887, 279 N.E.2d 519, 522.) In the instant case, the trial court found that the defendant's claim of self-defense was unbelievable. That finding is supported by substantial evidence and will not be disturbed on review. *People v. Jordan*, 4 Ill.2d 155, 122 N.E.2d 209, cited by the defendant, is distinguishable on the facts. There, the only version of what occurred was presented by the defendant. The Court found that since there was no evidence in the record to contradict the defendant's theory of self-defense, and since the defendant's story was not so im-

probable as to justify its being disregarded, the jury should not have rejected it.

■■ We find no merit to the claim that the defendant's total involvement constitutes voluntary manslaughter, and not murder. It is the defendant's position that the killing occurred during the course of a fight, and that it was the result of a sudden and intense passion resulting from serious provocation. There is evidence in the record that in the attempt to rob the victim the defendant stabbed and killed him. The elements of the crime of murder are the knowing, intentional and unlawful taking of another life. These elements were proved beyond a reasonable doubt. The cases cited by the defense on this point involve circumstances which are not similar to the factual situation here and we need not review them.

■■ Regarding the defendant's final contention, we find the sentence imposed was not excessive. The sentence was within the limits provided by statute. (Ch. 38, Ill. Rev. Stat. 1967, par. 9—1(b).) We find nothing in the record to warrant a modification thereof. *People v. Burris*, 49 Ill.2d 98, 273 N.E.2d 605.

Judgment affirmed.

DIERINGER, P. J., and ADESKO, J., concur.