THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* LEON
BOLTON *et al.*, Defendants-Appellants.

Third District No. 74-323

Opinion filed February 19, 1976.

966

James Geis and Mark Burkhalter, both of the State Appellate Defender's Office, of Ottawa, for appellants.

Edward P. Drolet, State's Attorney, of Kankakee (Charles H. Levad, Assistant Attorney General, of counsel), for the People.

Mr. JUSTICE STENGEL delivered the opinion of the court:

Defendants were found guilty of murder following a jury trial in the Circuit Court of Kankakee County. Defendant Bolton was sentenced to a term of imprisonment for not less than 90 nor more than 150 years, and defendants Marshall and Watkins were each sentenced to a term of imprisonment for not less than 75 years nor more than 150 years. On appeal, defendants raise the following issues: (1) whether the evidence was sufficient to establish their guilt beyond a reasonable doubt, (2) whether evidence of other crimes was improperly admitted, (3) whether comments by the prosecutor in her opening and closing arguments constituted prejudicial error, (4) whether the trial court erred by refusing to give an instruction on circumstantial evidence, and (5) whether the trial court improperly sequestered the jury over defendants' objections.

In order to fully dispose of the issues, it is necessary to discuss at some length the details of this case.

On December 20, 1970, the body of Bernice Vanzant was found in a wooded area approximately 600 feet from her house, near St. Anne, Illinois. She had been missing since December 16, 1970. Subsequently Leon Bolton, Charles Marshall, Tommy Watkins and Leo Collins were arrested and charged with the murder. Leo Collins plead guilty and received a sentence of from 21 to 40 years in the penitentiary. Phillip Troupe, who also confessed to being a participant in the murder, was handled as a juvenile and not charged with murder in return for his testimony at trial. Following the trial, at which Troupe was the sole occurrence witness for the State, the jury found the three defendants guilty of murder. On appeal, this court reversed and remanded because the State had permitted Troupe to testify falsely that he had not entered into an agreement with the State whereby he received preferential treatment in return for his testimony. (*People v. Bolton* (3d Dist. 1973), 10 Ill. App. 3d 902, 295 N.E.2d 11.) At the second trial, out of which this appeal arises, the State chose to present the testimony of Collins instead of Troupe.

At this trial, the State's evidence showed that the deceased was reported missing on December 16, 1970. A search of her home revealed that several items were missing, including a food stamp booklet. A search party consisting of friends and relatives of the deceased found her body on December 20, 1970. The coroner testified that the body, which was blindfolded and gagged, was frozen and had apparently been lying for some time in the position in which it was found. An investigator for the State testified that in his opinion the deceased had been killed where the body was found, because of a bullet found underneath the body and the amount of blood which had saturated the sand beneath the body. A pathologist performed an autopsy on December 21, 1970, and estimated the time of death to be four to five days before the autopsy. He also stated that a test of the potassium content in the eyes gave a time of death of 140 hours prior to the autopsy. The pathologist's examination revealed that Mrs. Vanzant had been shot four times with a .38 and twice with a .22, with the cause of death being a .22 wound in the head. The presence of sperm in the deceased's vagina was also noted.

A clerk employed by an A & P store in St. Anne testified that on December 16, 1970, five young males came into the store and purchased groceries with a food stamp booklet bearing the signature of Bernice Vanzant. The clerk identified Tommy Watkins as one of these young men. Another clerk testified to the same incident and identified Watkins

and Charles Marshall, and a customer who was in the store at this time identified Watkins and Leon Bolton.

Leo Collins testified that on December 15, 1970, at approximately 9 p.m. he, Troupe, Watkins, Marshall and Bolton walked to Mrs. Vanzant's house. Watkins was carrying a .22 rifle and a shovel, which he left on Mrs. Vanzant's porch. The six people talked for a while and then Bolton and Marshall took Mrs. Vanzant into her bedroom where they remained for about one-half hour. After Bolton and Marshall came out, Collins and Watkins went to the bedroom and had intercourse with Mrs. Vanzant. Collins and Watkins then returned to the living room, and Bolton re-entered the bedroom. A short time later Collins heard Bolton shout, "You are going to do what?" and a slap. Marshall went into the bedroom and Collins heard Bolton say, "She is going to ———," and then lower his voice. Bolton and Marshall brought out Mrs. Vanzant, who was gagged and blindfolded, and Marshall led her out the door while Bolton directed the others to follow. Collins observed that Bolton, who was holding the .38 revolver, stayed inside the house for a few minutes and then came out, wiping the door with a cloth. Bolton and Marshall led Mrs. Vanzant down the road while Watkins, who was carrying the .22 rifle, walked behind with Troupe and Collins. The three defendants then walked further with Mrs. Vanzant, and Troupe and Collins stopped and waited. About ten minutes later Collins heard shots which he described as one or two .22's and four or five .38's. The three defendants returned to where Collins and Troupe were standing, with Marshall carrying the .22 rifle, and the five men walked to a car parked in front of Mrs. Vanzant's house and started it. When they got into the car Bolton gave Collins a food stamp booklet. After driving to Collins' house and eating, Troupe, Bolton and Marshall left, while Watkins spent the night at Collins' house.

The next morning Collins went outside to tend to some livestock. When he returned to the house Watkins and the .22 rifle were gone. Later Troupe, Watkins, Bolton and Marshall came to Collins' house, and the five men then went to the A & P in St. Anne. On the way to the store, Bolton asked Collins to return the food stamp booklet which Bolton had given to Collins the night before. After purchasing groceries they returned to Collins' house. A bread delivery truck drove by and Troupe flagged down the driver, telling him that Collins wanted to pay their bill. The driver came into the house and was grabbed by Bolton and Marshall. He was put into the back of his truck accompanied by all the men but Marshall, who drove the truck. After driving for a while the truck stalled and the men got out, leaving the driver lying face down in the back of the truck. Bolton pointed a .38 revolver into the

truck and pulled the trigger, but the gun did not fire. Marshall grabbed the gun and fired five shots into the truck at the driver. At the trial Collins identified a photograph of the truck driver.

Collins was subjected to vigorous cross-examination by all three defense attorneys. It was brought out that Collins had told two different versions of the killing, one when he was arrested and the other when he plead guilty. Collins' first statement was that he was forced to go to Bernice Vanzant's home where Bolton and Marshall raped and shot Mrs. Vanzant. According to his second version, Bolton, Marshall, Watkins and Troupe raped Mrs. Vanzant and then led her across a field to shoot her. Collins explained the first version as being an attempt to protect himself and Watkins, who is Collins' cousin. The second version, Collins explained, was a statement given by Troupe which was read by the prosecutor at the time of Collins' guilty plea, and to which Collins assented as being substantially correct. Collins also admitted that in return for his testimony at trial the State agreed to write a letter to the parole authorities outlining his cooperation at the trial.

Orville Asher testified that he was employed as a bread delivery driver in December of 1970. He testified to being robbed and shot on December 16, 1970, and his version was substantially similar to Collins' version. He was shot in the head and the bullet was removed approximately three weeks before the trial. He stated that he was not able to identify his assailants because they were behind him when they were in the house and because he was lying face down in the truck. He recalled that the house in which he was first assaulted belonged to Olivia Collins.

A ballistics expert, who compared the bullet removed from Asher's skull with the .38 bullets removed from Mrs. Vanzant's body, testified that these bullets positively were fired from the same gun.

Bolton and two witnesses testified that he was in Chicago during December of 1970, but they were unclear as to exact dates. Marshall presented four witnesses placing him in Chicago during December of 1970, but they also were uncertain as to exact dates. Watkins testified and denied shooting Mrs. Vanzant. He admitted being in the A & P store, but stated that Collins was the person who used the food stamps. Two deputies and a friend of Mrs. Vanzant testified that they searched the wooded area near Mrs. Vanzant's home at various times from the day she was reported missing, December 16, until the day her body was found, December 20. They stated that on several occasions they searched the area where the body was eventually found, but they did not find a body.

The first issue is whether the evidence is sufficient to establish the

defendants' guilt beyond a reasonable doubt. Defendants contend that such degree of proof is lacking because their convictions are based on the testimony of Collins, an admitted accomplice and because the State's theory of when the murder occurred is contradicted by the testimony of the deputies who had searched unsuccessfully for the body.

■■ The testimony of a confessed accomplice is not of the most satisfactory character because such testimony may have been prompted by hopes of leniency or malice toward the accused. However, even the uncorroborated testimony of an accomplice is sufficient to sustain a conviction, if it satisfies the court or jury beyond a reasonable doubt. (*People v. Hansen* (1963), 28 Ill. 2d 322, 192 N.E.2d 359, *cert. denied* (1964), 376 U.S. 910, 11 L. Ed. 2d 608, 84 St. Ct. 665; *People v. Baker* (1959), 16 Ill. 2d 364, 158 N.E.2d 1.) In *Hansen*, the court stated:

> "Such infirmities, in turn, go to the questions of the weight of the evidence and the credibility of the witnesses, matters peculiarly within the province of the court or jury in the first instance, and if the jury or trial court is satisfied by the testimony of an accomplice that the defendant is guilty beyond a reasonable doubt, we will not disturb a conviction on review unless it is plainly apparent that such degree of proof is lacking." 28 Ill. 2d 322, 332, 333.

■■ Admittedly, Collins gave at least three different versions of the murder and agreed to testify at trial in hopes of an early parole. However, the jury had before it much more than the bare testimony of Collins. Physical evidence and testimony by other witnesses corroborated Collins on each material point. Collins' testimony regarding intercourse with Mrs. Vanzant was corroborated by the presence of sperm in her vagina. The pathologist's estimation of the time of death approximated the time Collins said Mrs. Vanzant was shot. Collins stated that he heard one or two .22's and four or five .38's, which was corroborated by the fact that Mrs. Vanzant had been shot twice with a .22 and four times with a .38. Mrs. Vanzant's body was found blindfolded and gagged which corresponds to Collins' version of the events preceding the murder. Three witnesses identified the defendants as being in the A & P store and using Mrs. Vanzant's food stamps, in further corroboration of Collins' testimony. Finally, ballistics tests revealed that the gun which Collins testified Marshall used to shoot Asher and which Collins testified was in the possession of the defendants the night Mrs. Vanzant was killed did, in fact, fire bullets into the body of Mrs. Vanzant. The jury was in a position to see and hear the witnesses and observed their demeanor. They were able to evaluate the testimony of Collins not only in light of his prior statements and possible motives for testifying, but

also in light of other testimony and physical evidence. We thus do not find Collins' testimony to be so implausible or unbelievable as to warrant overturning the verdict.

■■ We are not dissuaded from this view by the inconsistent testimony concerning the failure to locate the body until December 20, 1970. There was other credible evidence of the time of death, including the frozen state of body, the apparent length of time it had been lying where it was found, and the investigator's opinion that the killing occurred where the body was found, based on the .38 bullet found beneath the body and the amount of blood which had saturated the soil. All of this evidence corroborated Collins' testimony. Having reviewed the record, in our judgment the evidence is not so improbable or unsatisfactory as to justify a reasonable doubt of defendants' guilt and cause a reversal of the convictions. *People v. Ross* (1968), 41 Ill. 2d 445, 244 N.E.2d 608, *cert. denied* (1969), 395 U.S. 920, 23 L. Ed. 2d 237, 89 S. Ct. 1771; *People v. Peto* (1967), 38 Ill. 2d 45, 230 N.E.2d 236; *People v. Henry* (1st Dist. 1973), 16 Ill. App. 3d 429, 306 N.E.2d 668.

Defendants next direct our attention to the following portion of the prosecutor's opening statement:

"And she is then subjected to a sexual assault by four of the five men * * *. During this period of time she screams. * * * After the attack she is taken from her house across the field to the east of her house and into a wooded area beyond the field. There this witness will testify Charles Marshall took a .38 caliber revolver from his pocket and shot Mrs. Vanzant from the back five times. * * * Defendant Tommy Lee Watkins had a .22 caliber rifle which he * * * left inside during the sexual attack and took it with him as they took her across the field and into the woods. After defendant Marshall shoots Mrs. Vanzant five times Tommy Lee Watkins raises the .22 rifle and shoots her once in the head killing her."

Defendants contend that Collins' testimony showed that the intercourse was consensual, and that there was no evidence of a "sexual assault." Further as Collins was not an eyewitness to the actual shooting, there was no evidence to support the prosecutor's detailed version of how Mrs. Vanzant was shot.

An opening statement should not be permitted to become an argument. It should be brief and general rather than detailed and should contain an outline of facts which the prosecution in good faith expects to prove. *People v. Weller* (4th Dist. 1970), 123 Ill. App. 2d 421, 258 N.E.2d 806.

In the instant case, although Collins did not testify on direct exam-

ination to a "sexual assault," he did testify to hearing a slap, loud voices and then seeing Mrs. Vanzant brought from the bedroom blindfolded and gagged. Moreover, on cross-examination of Collins, the defense attorneys elicited the fact that in prior statements Collins had said that Mrs. Vanzant had been raped. See, e.g., *People v. Riles* (1st Dist. 1973), 10 Ill. App. 3d 772, 295 N.E.2d 234.

■■ The prosecutor's account of the shooting was not supported by direct evidence but was a reasonable inference from the evidence. Considering that the State's theory was that the three defendants shot Mrs. Vanzant with a .38 revolver and a .22 rifle, we believe the error was minimal. Moreover, the record shows that the jury was repeatedly cautioned by the prosecutor, defense attorneys, and the court that both opening and closing arguments were not evidence and were to be disregarded if not based on the evidence adduced at trial. (*People v. Brooks* (1st Dist. 1964), 52 Ill. App. 2d 473, 202 N.E.2d 265.) We believe that the statements were made in good faith and were not of such character as to have prejudicially affected the verdict. *People v. Butler* (4th Dist. 1973), 12 Ill. App. 3d 541, 298 N.E.2d 798.

The next issue is whether evidence of other crimes was improperly admitted. Defendants contend that evidence regarding the robbery and shooting of Orville Asher was not relevant to the issues at trial, and, since Collins was the only witness who could identify the defendants as Asher's assailants, this evidence should not have been admitted absent independent identification.

Evidence of other crimes is admissible if relevant for any purpose other than to show propensity to commit a crime. (*People v. McDonald* (1975), 62 Ill. 2d 448; *People v. Maxon* (3d Dist. 1975), 35 Ill. App. 3d 670, 341 N.E.2d 479.) The trial court should exercise sound discretion in admitting such evidence, taking into consideration its probative value and prejudicial effect. *People v. Butler* (2d Dist. 1975), 31 Ill. App. 3d 78, 334 N.E.2d 448.

■■ In the instant case, this evidence contradicted the alibi defense of Bolton and Marshall by showing their presence in St. Anne one day after Mrs. Vanzant was killed. (*People v. Horton* (1st Dist. 1966), 78 Ill. App. 2d 421, 223 N.E.2d 202.) In addition, since Collins did not witness the actual shooting of Mrs. Vanzant, evidence of the Asher shooting was relevant because ballistics tests showed that the gun which defendants used to shoot Asher was the same gun used to shoot Mrs. Vanzant. (People v. Carter (1967), 38 Ill. 2d 496, 232 N.E.2d 692, *cert. denied* (1968), 391 U.S. 965, 20 L. Ed. 2d 877, 88 S. Ct. 2033.) The fact that Collins was the only identification witness to the Asher shooting is a matter affecting the weight and probative value of this evidence and

does not render the evidence per se inadmissible. The evidence was relevant, and we do not believe that the trial court abused its discretion in admitting it. *People v. Harvey* (1957), 12 Ill. 2d 88, 145 N.E.2d 88.

Defendants also complain that certain comments made by the prosecutor in her closing argument were improper and prejudicial. During rebuttal the prosecutor stated:

> "Now, there were five people present that night. Three of them are defendants in this case  \*  \*  \*. In addition to that there are two other people present. Philip Troupe, whom Mr. Barton and Mr. Samuels told you at the beginning of this case is a liar, and Leo Collins.
>
> Now, as a prosecutor I have a duty not to present to you a witness who I think is lying.  \*  \*  \*
>
> Every lawyer prepares a case differently and may or may not call the same witnesses. I called Collins because as a prosecutor by calling him I am vouching for his credibility and reliability."

Ordinarily it is improper for a prosecuting attorney to argue to a jury that personal and official prestige warranted the truthfulness of the People's witness or that witness would not have been called. *People v. Bitakis* (1st Dist. 1972), 8 Ill. App. 3d 103, 298 N.E.2d 256.

Prior to these comments however, the defense attorneys made the following statements:

> "And I am not arguing here that [Collins] has a faulty recollection. He is lying.  \*  \*  \*  In other words he has admitted that he lied in the past to save his skin and he is testifying to save his skin or to salvage what he can of it.
>
> And I think you have to ask yourself why didn't Leo Collins testify the first time around instead of Philip Troupe.
>
> Leo Collins is desperate  \*  \*  \*  he will do anything to get out of there.  \*  \*  \*  And that includes lying to a jury  \*  \*  \*  so his testimony in a sense is perjured.
>
> And you have already heard enough perjury in this case."

■■ It is obvious that the prosecutor's comments were in response to arguments made previously by defense counsel. The defense attorneys accused Collins of lying and committing perjury, asked why Collins did not testify at the first trial, and made reference to Troupe, who testified at the first trial but not the second. Defendants may not complain of improper comments where defendants' attorneys have provoked such comments by their own improper argument unless the prosecutor's argument is so prejudicial as to have deprived defendants of a fair trial. *People v. Mostert* (3d Dist. 1975), 34 Ill. App. 3d 767, 340 N.E.2d 300; *People v. Fleming* (1st Dist. 1964), 54 Ill. App. 2d 457, 203 N.E.2d 716.

This was a lengthy and hotly contested trial, in which some improper remarks were made by both sides. Moreover, the trial court gave IPI—Criminal 3.17, which informed the jury that the testimony of Leo Collins was subject to suspicion and should be considered with caution. Consequently, we find that the prosecutor's remarks were not prejudicial to defendants. *People v. Weaver* (1st Dist. 1972), 7 Ill. App. 3d 1104, 288 N.E.2d 669.

Defendants assign as error the refusal by the trial court to give the second paragraph of IPI—Criminal 3.02 which reads as follows:

"You should not find the defendants guilty unless the facts and circumstances proved exclude every reasonable theory of innocence."

The Committee Notes state that the "* * * second paragraph should be given only when the proof of guilt is *entirely* circumstantial."

■■■ Collins saw defendants take Mrs. Vanzant, who was bound and gagged, down the road while carrying weapons and then heard shots. The autopsy revealed that Mrs. Vanzant had been shot from behind and from the side by a rifle and revolver. Ballistics tests showed that Mrs. Vanzant was shot with the same weapon which Marshall used to shoot Asher. Identity is only one element which the State must prove. Another necessary element of proof is the corpus delicti. (*People v. Christiansen* (2d Dist. 1969), 118 Ill. App. 2d 51, 254 N.E.2d 156.) Viewed in its entirety the State's case was not completely circumstantial. Accordingly, the trial court did not err by refusing the second paragraph of this instruction. *People v. Minish* (3d Dist. 1974), 19 Ill. App. 3d 603, 312 N.E.2d 49; *People v. Springs* (2d Dist. 1972), 2 Ill. App. 3d 817, 277 N.E.2d 764.

Defendants' last contention is that the trial court erred by ordering the jury sequestered prior to trial.

The pertinent portion of section 115—4(m) of the Code of Criminal Procedure (Ill. Rev. Stat. 1973, ch. 38, §115—4(m)), provides that the jurors shall be permitted to separate:

"* * * until final submission of the cause to the jury for determination, except that no such separation shall be permitted * * * after the court, upon motion by the defendant or the State *or upon its own motion*, finds a probability that prejudice to the defendant or to the State will result from such separation." (Emphasis added.)

We note that in 1969 section 115—4(m) was amended to give the trial court discretionary power to sequester the jury.

■■ The record shows that the trial court expressed concern that friends or relatives of the deceased might attempt to communicate with

or influence members of the jury, due to the fact that they were all from the same community. The trial court was in a superior position to determine the likelihood of such prejudice. As stated in *People v. Yonder* (1969), 44 Ill. 2d 376, 256 N.E.2d 321, *cert. denied* (1970), 397 U.S. 975, 90 S. Ct. 1094, 25 L. Ed. 2d 270, the decision to sequester a jury is within the sound discretion of the trial court. Considering the nature and circumstances of this case, the trial court's order was not an abuse of discretion. *People v. Steel* (1972), 52 Ill. 2d 442, 288 N.E.2d 355.

After considering all of the arguments advanced by the defendants and the complete record, we are of the opinion that the defendants received a fair trial, free from prejudicial error and sufficient to establish defendants' guilt beyond a reasonable doubt.

Accordingly, the judgments of convictions of the Circuit Court of Kankakee County are affirmed.

Affirmed.

BARRY and SCOTT, JJ., concur.