**People of the State of Illinois, Plaintiff-Appellee, v. James G. Jones, Defendant-Appellant.**

Gen. No. 53,599.

First District, First Division.

December 19, 1969.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Herbert Becker, Norman W. Fishman, and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

Edward V. Hanrahan, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Richard Zulkey, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE MURPHY delivered the opinion of the court.

Defendant Jones and Earnest Harris were jointly indicted on May 17, 1968, for the offense of burglary, in violation of chapter 38, § 19–1, Ill Rev Stats 1967. The Public Defender was appointed counsel for both defendants. When the case came on for trial on August 14, 1968, Harris pleaded guilty, and the trial proceeded as to Jones. A jury found Jones guilty, and he appeals contending (1) the court erred in denying him the right to produce an alibi witness pursuant to a notice given to the State, and (2) the sentence imposed on him is too severe and should be reduced.

The trial record shows that on May 8, 1968, Gervacio Torres was the owner of a grocery store at 1301

West Madison Street, Chicago. When he arrived at the store at about 7:00 a. m. that morning, he found the store burglarized, police there, and groceries, meats and cigarettes taken. The burglars had entered the store through a hole cut in the wall of an adjoining building at 1303 West Madison, used by the Bee Bindery Company as a storeroom.

At about 6:30 a. m. on May 8, Allen Stamps and Doc Little arrived for work at the Bee Bindery plant at 15 South Throop Street. They saw several strange men at the rear of 1301 and going in the back door of 1303. They knew the men were not employees of the Bee Bindery Company, and they flagged a squad car. As they talked to Officer Carlo, Earnest Harris came along carrying a box filled with meats and cigarettes. Officer Carlo arrested Harris and motioned to another police car to go to the rear of the building, where Officer John Harris observed defendant Jones coming down the rear sidewalk carrying another box containing meats and cigarettes. The defendant's shoes and trousers were covered with a white dust. After Jones was arrested the police entered 1303 through the rear door. Immediately beyond the doorway there was a one and one-half by two-feet hole in the plaster wall, and there was plaster dust on the floor. The hole led into the grocery store at 1301.

Officer Harris testified that he arrested defendant Jones at the rear of the building; Officer Carlo testified that he saw the defendant at the rear of the building; and the witness Little stated that a person was arrested in the rear.

Defendant Jones testified and denied any involvement in the offense. He stated that he lived at 1307 West Madison Street with John Brown and his wife Lisa, and was standing on the corner of Madison and Throop waiting for a bus when he was arrested. In the course of his testimony Jones gave various residential

addresses, and that the address where he lived was really 1308 and he made a mistake when he said 1307. He said he had plaster powder on his trouser legs because he worked with plastic powder at his place of work.

Earnest Harris, the codefendant, testified for the defendant and denied knowing Jones and denied that Jones participated in the burglary. He said he saw Jones waiting for a bus.

Conviction statements as to Harris and Jones were admitted in evidence and read to the jury. Jones was found guilty of burglary in October, 1960. Harris had been convicted of auto larceny and auto theft.

Initially considered is defendant's contention that the trial court committed prejudicial error in excluding the testimony of defendant's alibi witness. The record shows that on June 8, 1968, about two months prior to the trial on August 14, 1968, the State filed a notice requesting the defendants to "file and serve upon the prosecuting attorney a notice in writing of his intention to assert the defense of alibi," pursuant to chapter 38, § 114–14, which provides that whenever a defendant proposes to offer in his defense "testimony to establish an alibi, such defendant shall, not less than 5 days before the trial of such cause, file and serve upon the prosecuting attorney a notice in writing of his intention to assert such alibi."

On August 12, 1968, counsel for defendant gave notice to the State that Mr. John Brown of 1305 West Madison "may or may not be called" as a witness for the defense. At the trial on August 14, the court sustained a motion of the State which objected to the testimony of the alibi witness because the notice of the alibi witness was filed too late. The reason assigned by the State was that it did not have ample time to investigate because the address of the alibi witness "happens to be a laundromat and not a residence."

193

On appeal defendant contends that the court "could have postponed the hearing for another day or two for the State to make its investigation. Instead he was denied the opportunity to produce his alibi witness. The evidence of this witness might well have been of great importance to the defendant and might even have saved him from being convicted. We view the court's action as highly arbitrary and prejudicial to the defendant and resulted in denying the defendant a fair trial and deprived him of his constitutional rights."

Defendant asserts that a short extension was feasible and "in line with the practice in this case of continuing the case at least 7 times before it came to trial on August 14. . . . After granting all these continuances one more would not have in any manner interfered with the administration of Justice. Not one of the 7 continuances was requested by the Defendant."

On this point defendant's authorities include: Brady v. Maryland, 373 US 83 (1963), where the court said (p 87):

"We now hold that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."

Bradley v. State, 227 Ind 131, 84 NE2d 580 (1949), where it is said (p 583):

"In other words, in this situation appellant, Bradley's right to prove alibi remained unchanged and unaffected by the statute. Denying him the right to introduce this evidence, under the situation existing, constitutes reversible error."

State v. Thayer, 124 Ohio St 1, 176 NE 656 (1931), where the evidence offered tending to establish defend-

194

ant's alibi was rejected by the court for the reason of failing to give a statutory 3-day notice. There it is said in a concurring opinion (p 659):

"The operative effect of the statute therefore as applied in this case deprived defendant of his rights under the due process provisions of the Constitution."

 After examining the provisions of section 114–14, we conclude that this section confers upon the trial court a broad discretion as to its application, and its rulings in this regard should not be upset on review unless there has been a plain abuse of discretion. Under the circumstances portrayed in this record, we find that the trial court did not abuse its discretion in sustaining the motion of the State.

Considered next is defendant's contention that the sentence imposed on defendant Jones was too severe and should be reduced. Harris pleaded guilty and was sentenced to the penitentiary for a term of 6 to 12 years. After defendant Jones was found guilty, the same judge sentenced him to the penitentiary for a term of 10 to 20 years. Defendant argues that he was a tool and die set up man and ran his own machine; that his only conviction was in 1960; that Mr. Torres suffered no real loss; and a sentence of 10 to 20 years in the instant case was too severe for the offense involved.

In objecting to the reduction of defendant's sentence, the State notes that it has been held repeatedly that "the authority given reviewing courts to reduce sentences imposed by trial judges 'should be applied with considerable caution and circumspection, for the trial judge ordinarily has a superior opportunity in the course of the trial and the hearing in aggravation and mitigation to make a sound determination concerning the punishment to be imposed than do the appellate tri-

bunals.' " People v. Caldwell, 39 Ill2d 346, 356, 236 NE 2d 706 (1968).

The State argues that "in the case at bar, the Common-Law Record indicates that the trial court heard such testimony regarding the aggravation and mitigation of the sentence. Such testimony, however, cannot be found in the Abstract or the Record. Thus, the Record shows nothing to infer that the sentence was excessive or that the trial court's determination was unsound. In fact, the only information concerning the defendant Jones to be found is that he is thirty-four years old and that he had a prior conviction for burglary. There is nothing to illuminate his background, family, or personal history except his age and prior conviction which was shown in rebuttal. These factors hardly indicate that he is a bright rehabilitation prospect. From what the record contains, the sentence of ten to twenty years in the penitentiary was not too severe. Because of the absence of the defendant's background, the reviewing court is not able to even consider whether the sentence was truly excessive. It is essential that an appellate court so empowered to reduce a sentence 'have knowledge of the defendant's moral character, life, family, occupation, and criminal record.' People v. Evrard, 55 Ill App2d 270, 275 (1965). Without such information, reviewing courts are asked to make decisions in a vacuum. 'The burden of presenting an adequate abstract and record rested upon the defendant and we are limited to the record of the trial court.' People v. Smice, 79 Ill App2d 348, 354 (1967), and People ex rel. Coats v. Sain, 24 Ill2d 248, 250 (1962). The defendant failed to prepare for review a sufficient record of the trial court proceedings and so prevented this court from considering his contention."

██ ██ In general, we agree with the foregoing pronouncements. However, we are not persuaded that de-

fendant's failure to include in this record the details of the "mitigation and aggravation" hearing precludes this court in this case from considering defendant's contention that his sentence was excessive. We do agree that our consideration of this issue is limited to the instant record in this court, and we take judicial notice of People v. Harris, 118 Ill App2d 159, 254 NE2d 837, a companion appeal by codefendant Harris, who was jointly indicted with defendant. With these limitations in mind we have considered defendant's contention that his sentence is excessive.

Recently in People v. Nelson, 41 Ill2d 364, 368, 243 NE2d 225 (1968), our Supreme Court reviewed the right of the reviewing courts of Illinois to reduce punishment at the appellate level in this state after "a careful examination of the record to see if a case is a proper one for reduction," and we have so examined the instant record.

The offense of burglary, of which both Harris and Jones stand guilty, was participated in by both and to the same extent. Both had criminal records, somewhat the same. Harris, who pleaded guilty, received a sentence of six to twelve years, and Jones, who exercised his right to a jury trial, was sentenced to ten to twenty years by the same judge. It seems to be a reasonable inference that Jones was penalized for exercising his constitutional rights.

We recognize that not every offense in a like category calls for an identical punishment. There may be a proper variation in sentences as between different offenders, depending upon the circumstances of the individual case. As a general rule, where the punishment for the offense is fixed by statute, that imposed in the sentence must conform thereto, and a sentence which conforms to statutory regulations is proper. Before an Appellate Court will interfere, it must be mani-

fest from the record that the sentence is excessive and not justified by any reasonable view which might be taken of the record. (People v. Hobbs, 56 Ill App2d 93, 99, 205 NE2d 503 (1965).) Disparity of sentences between defendants does not, of itself, warrant the use of the power to reduce a punishment imposed by the trial court. People v. Thompson, 36 Ill2d 478, 482, 224 NE2d 264 (1967).

With the foregoing principles in mind, and although defendant's sentence is within the statutory range, we have concluded, after considering the nature of the offense and the attendant facts and circumstances here, that it is manifest from the instant record that the sentence is excessive and not justified by any reasonable view which might be taken of the record, and it calls for the exercise of the power to "reduce the punishment imposed by the trial court." (Illinois Supreme Court Rule 615(b)(4).) We believe fundamental fairness in sentencing requires a reduction of defendant's sentence to the same as that of codefendant Harris.

For the reasons given, defendant's conviction of burglary is affirmed and defendant's sentence is reduced to a minimum of six years and a maximum of twelve years in the Illinois State Penitentiary. As modified, the judgment of the Circuit Court is affirmed.

Judgment affirmed as modified.

ADESKO, P. J. and BURMAN, J., concur.