People of the State of Illinois, Plaintiff-Appellee, v. Donald D. Duncan and Otha B. Lacy, Defendants-Appellants.

Gen. No. 53,175.

First District, Second Division.

July 21, 1970.

Giannis, Giannis and Georges, of Chicago (Peter Georges, of counsel), for appellants.

Edward V. Hanrahan, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Richard S. Rosen, Assistant State's Attorneys, of counsel), for appellee.

MR. PRESIDING JUSTICE McCORMICK delivered the opinion of the court.

In December 1967, Donald D. Duncan and Otha B. Lacy, defendants-appellants, together with Stanley C. Karpinski and Lawrence Woodhouse, were indicted by the Grand Jury of Cook County for the offense of theft of property of Wieboldt Stores, Inc., having a value in excess of $150. At a trial before the court without a jury defendants Duncan, Lacy and Woodhouse were found guilty as charged and sentenced to five years' probation, with the condition that the first year of probation be served in the Cook County Jail. From that conviction Duncan and Lacy bring this appeal.

The facts appearing in the record are as follows: At about 6:00 a. m., on December 7, 1967, Mike Panopoulos, director of the security division of Wieboldts, was on the second level of an abandoned building behind the Wieboldt warehouse at 1500 West Monroe Street, in Chicago, when he observed defendants Duncan and Lacy park their cars on Laflin Street. He then saw a Hertz rental truck back onto the receiving dock at the warehouse, at which time Duncan and Lacy loaded the truck, a process requiring about 25 minutes. The truck was driven by Woodhouse, who was one of the convicted defendants, but not a party to this appeal.

Panopoulos testified that he and his partner, Gordon Mead, chief investigator for Wieboldt Stores, followed the truck to a tavern where the driver was joined by Karpinski, the other nonappealing defendant. The two defendants got into the truck where they talked for a short time, and when they left the truck they were arrested by a police officer who had been called by Panopoulos. The contents of the truck proved to be bed linens from Wieboldt Stores valued at approximately $2,500. The witness and his partner then returned to the warehouse, where defendants Duncan and Lacy were arrested.

Gordon Mead testified that he had seen Duncan and Lacy enter the Wieboldt warehouse earlier that morning. Lacy testified that he and Duncan had tried to gain entrance to the warehouse but the guard did not let them in, so they left and went to a restaurant. Lacy stated that he later returned to the warehouse where he changed his clothes and punched his time card, then went to another Wieboldt warehouse for his day's work, where he was arrested at about 11:00 a. m.

Duncan testified that he and Lacy went to the warehouse so that Lacy could change his clothes, but they could not get in, so they went to a grill. They returned to the warehouse and waited for the foreman to come

and let them in. Duncan testified that he was arrested about 10:30 a. m.

On cross-examination Duncan was asked if he rented a Hertz truck from the Sinclair Station at Montrose and Central, and the question was objected to on the ground that it went beyond the scope of direct examination and that there was no positive identification of a specific vehicle in the question. The objections were overruled.

In this court the defendants object to the fact that the trial court permitted the State's Attorney to ask defendant Duncan questions relating to his driver's license, and, over objection, questions relating to the rental of the Hertz truck from a location within the City of Chicago. It is argued that there is no evidence in the record to substantiate that the truck rented by Duncan on December 6, 1967, was the one identified by the witnesses for the prosecution, nor is there evidence as to where it was rented.

Over objection, Duncan answered that on December 6, 1967, he had rented a Hertz truck from the Sinclair Station at Montrose and Central Avenues in Chicago. The fact that a Hertz truck was placed at the scene of the crime would seem to permit the examination with reference to whether or not either of the defendants had rented the truck. The Hertz truck was constantly referred to during the trial. On direct examination Duncan's attorney asked him if he alone, or with others, had removed cases of bed sheets from the warehouse and placed them on a Hertz truck parked at that platform. He answered he had not. The cross-examination of Duncan with reference to the rental of the truck was proper.

It is true that the scope of a cross-examination is limited to points and matters testified to or mentioned on direct examination; however, in Marut v.

Costello, 34 Ill2d 125, 214 NE2d 768, at 127, the court made the following statements:

"As we held in Muscarello v. Peterson, 20 Ill2d 548, cross-examination is limited to matters brought out on direct examination, but this rule should not be given a narrow or technical application. The purpose of cross-examination is to obtain the truth. However, the matters inquired into must be relevant to the case on trial. This question of relevancy was passed upon in Caley v. Manicke, 29 Ill App 2d 323, (reversed on other grounds in 24 Ill2d 390,) where it was said that the question was whether the evidentiary facts offered proved or tended to prove or disprove a given proposition material to the case as shown by the pleadings. Relevancy is established where a fact offered tends to prove a fact in controversy or renders a matter in issue more or less probable. To be probable, it must be tested in the light of logic, experience and accepted assumptions as to human behavior."

In the instant case, the Hertz truck was brought into direct examination of Duncan by his attorney. The court's admission with reference to the renting of the truck was proper.

The judgment of the Circuit Court is affirmed.

Affirmed.

LYONS and BURKE, JJ., concur.