THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* MAJOR PEERY, Defendant-Appellant.
First District (4th Division)    No. 62136

Opinion filed August 25, 1976.—Rehearing denied September 7, 1976.

James R. Streicker and Allen L. Wiederer, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Iris E. Sholder, and Edward D. Stern, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE DIERINGER delivered the opinion of the court: ·

The defendant, Major Peery, was convicted of murdering his wife, Lovelle Peery, on March 31, 1971, and after a jury trial in the Circuit Court of Cook County, he was found guilty of murder. That judgment was reversed on appeal (*People v. Peery* (1973), 11 Ill. App. 3d 730) because the trial court erroneously refused to instruct the jury on the lesser included offense of voluntary manslaughter. Upon remand to the trial court, the defendant was again found guilty of murder by a jury, and he was sentenced to a term of 30 to 90 years.

The issues on appeal are whether the court erred by failing to give the tendered jury instruction on voluntary manslaughter based on serious provocation and sudden and intense passion, even though the court instructed the jury with reference to voluntary manslaughter based on an unreasonable belief that circumstance existed which would justify the killing; whether it was error to permit the State to cross-examine the defendant concerning his unwillingness to support his family and to introduce rebuttal testimony on the same matter; and whether it was error to permit the State to introduce into evidence the fact that the defendant had previously been convicted of attempted murder.

At retrial the evidence indicated Peery had been married for 18 years to Lovelle Peery, but had separated and lived apart from her for about six weeks prior to March 31, 1971, when the killing took place. Mrs. Peery and three of her children were living with her son by a previous marriage at 5544 South Laflin in Chicago. Major Peery lived with his daughter, Patricia Peery Walker, at 5656 South Justine.

At about 8 p.m. on March 31, 1971, Lovelle Peery was at the apartment of her daughter and son-in-law, Gail and Timothy Jackson, located at 5604 South Laflin in Chicago. Patricia testified she had been there and talked to her mother about whether her sister, Margaret, could come to live with her, but she was denied permission. Upon returning to 5656 South Justine, she met her father coming out of the house. She told him her mother had refused permission, and the defendant said he was going to get Margaret. Patricia accompanied her father to the Jackson apartment, and upon arriving she saw him open a knife he was carrying in his pocket.

Gail Jackson testified that when she answered the bell she could only see Patricia standing at the door, and upon opening the door, the defendant rushed into the apartment.

The defendant engaged in an argument with his wife and accused her of keeping his children from him and of keeping company with other men. Lovelle Peery denied both accusations. During the argument she was standing about two feet from the sink in the kitchen and Major Peery was standing opposite his wife across the room. The four Peery children and Timothy Jackson, who were all present, testified that after several minutes of argument Major said, "What are you going to the sink for?" He then rushed toward his wife, grabbed her around the neck with one hand and began stabbing her with the other. At trial he testified he was 7½ inches taller and 80 pounds heavier than his wife.

The children testified Lovelle Peery had made no move toward the sink and had nothing in her hands when she was attacked. In an effort to stop the attack Patricia hit her father repeatedly on the head with a large spoon and Gail Jackson hit him on the head with a metal chair.

The police were summoned, and Officer Patrick Duignan testified he asked the defendant what happened, and the defendant said, "I stabbed my wife."

The defendant testified he had gone to the apartment out of concern for his children. He said he rushed across the room toward his wife when she said to him, "Anyway, I made up my mind to kill you." When she went to the sink he thought she was going to do him some harm because she had threatened him. He remembered seeing nothing in her hands, but he testified she struck him in the head with a heavy object and he did not remember the stabbing. The Peery children and son-in-law all testified that Lovelle did not threaten her husband's life.

In the original trial the defendant tendered, and the court refused, instructions on self-defense and both IPI instructions on voluntary manslaughter (Illinois Pattern Jury Instruction, Criminal, Nos. 7.03 and 7.05). These instructions provide:

7.03 Voluntary Manslaughter—Provocation

A person commits the crime of voluntary manslaughter who kills an individual if, at the time of the killing, he acts under a sudden and intense passion resulting from serious provocation by the deceased. Serious provocation is conduct sufficient to excite an intense passion in a reasonable person.

7.05 Voluntary Manslaughter—Intentional—Belief of Justification

A person commits the crime of voluntary manslaughter who intentionally or knowingly kills another if, at the time of the killing, he believes that circumstances exist which would justify the killing, but his belief that such circumstances exist is unreasonable.

In the second trial the court refused 7.03 but gave 7.05 and also gave an instruction on self-defense.

The defendant first contends it was error for the court not to give his instruction No. 3 (IPI Criminal No. 7.03), and relies on the opinion reversing his first murder conviction wherein the court stated:

"Even though the evidence was conflicting, the defendant's trial testimony, if believed by the jury, was sufficient to create an issue of fact as to whether he acted under a sudden and intense passion resulting from a serious provocation as defined in the Statute."

■■ The tendered instruction on sudden and intense passion was apparently based on the defendant's testimony that his wife had threatened to kill him and struck him on the head with an object she apparently got from the sink. Under these circumstances the instruction for voluntary manslaughter based on an unreasonable belief would also be applicable. By returning a verdict for murder, the jury had to find that no circumstance existed which would allow the defendant to believe, even unreasonably, that he was justified in killing his wife. In finding the defendant guilty of murder the jury necessarily must have disbelieved his testimony that he was threatened and struck by his wife. Consequently, there was no prejudice to the defendant in giving No. 7.05 and not No. 7.03.

The defendant next contends it was error to allow the State to cross-examine him with respect to whether he was willing to support his family and, similarly, it was error to introduce the rebuttal testimony of a consultant from the Department of Public Aid. The defendant argues it was irrelevant whether or not he gave his wife money for the support of their children, and the result of such error was to present a picture of him as an unfit parent which was designed to appeal to the passions and prejudices of the jury.

The general rule is that cross-examination is limited to matters brought out on direct examination, but this rule should not be given a narrow or technical application as long as the matters inquired into are relevant to the issues. (*People v. Duncan* (1970), 127 Ill. App. 2d 305; *Marut v. Costello* (1966), 34 Ill. 2d 125; *Alford v. United States*, 282 U.S. 687, 75 L. Ed. 2d, 51 S. Ct. 218 (1931).) It is well settled that the extent of cross-examination with respect to an appropriate subject of inquiry rests in the sound discretion of the trial court and only a clear abuse of discretion resulting in manifest prejudice will constitute grounds for reversal. *People v. Burris* (1971), 49 Ill. 2d 98.

■■ In this case the defendant testified on direct examination that the purpose of visiting his wife on the night of her death was to talk to her concerning the well-being of his children, which certainly would include support of his children. It was therefore proper to examine him

concerning any matter which went to explain, modify or discredit his testimony on direct examination. (*People v. Stock* (1973), 15 Ill. App. 3d 722; *People v. Bey* (1969), 42 Ill. 2d 139.) This type of examination was particularly relevant in this case because Patricia Peery Walker had testified the defendant had opened his knife prior to entering the apartment, and his motive for going to the apartment was open to question.

We find the court did not abuse its discretion in permitting the cross-examination or the rebuttal testimony. It is manifest no prejudice could have resulted had there been an error in view of the overwhelming evidence of guilt adduced from five witnesses, four of the defendant's children and a son-in-law, who testified to the unprovoked attack on Lovelle Peery.

The defendant finally contends the court erred by allowing evidence of his previous conviction of attempted murder on October 23, 1963. He argues attempted murder is not an infamous crime as set forth in section 124—1 of the Illinois Code of Criminal Procedure (Ill. Rev. Stat. 1973, ch. 38, par. 124—1), and it was an abuse of discretion for the trial court not to exclude it because the probative value of the evidence was outweighed by the danger of unfair prejudice.

■■ The rules governing the admission of prior convictions into evidence are set forth in *People v. Montgomery* (1971), 47 Ill. 2d 510. In that case the court indicated it was no longer necessary for a crime to be characterized as infamous to be available for impeachment purposes. Under the new rule a prior conviction is admissible if the crime was punishable by death or imprisonment in excess of one year or involved dishonest or false statements regardless of the punishment, unless the judge determines the probative value of the evidence of the crime is substantially outweighed by the danger of unfair prejudice. Evidence of a prior conviction is not admissible if a period of more than 10 years has elapsed since the date of conviction or of the release of the witness from confinement, whichever date is later.

In determining whether the probative value exceeds the prejudice the factors discussed in *Montgomery* were set forth in the case of *People v. Dee* (1975), 26 Ill. App. 3d 691, as follows: (1) the nature of the prior crimes; (2) the length of the defendant's criminal record; (3) the defendant's age; (4) the likelihood that the defendant would not testify if his motion to exclude his prior convictions was denied; (5) the nearness or remoteness of the prior convictions; (6) the defendant's subsequent career; and (7) whether the prior crime was similar to the one charged.

■■ Using these criteria we conclude the court did not abuse its discretion and the probative value was sufficient to overcome whatever prejudice may have accrued against the defendant. It is important to note

the subject of the defendant's prior conviction was first introduced on direct examination when his counsel asked if he had once been convicted of attempted murder, and he replied his prior conviction was for aggravated battery. In fact, he had been convicted of both offenses, but the appellate court reversed the aggravated battery conviction and affirmed the attempted murder conviction. (*People v. Peery* (1967), 81 Ill. App. 2d 372.) Having opened the door as to the prior conviction, he cannot now complain. The admission into evidence of his conviction of attempted murder could not be prejudicial when it was introduced to contradict the defendant's statement on direct examination that he was convicted of only aggravated battery.

For these reasons, the judgment of the Circuit Court of Cook County is affirmed.

*Affirmed.*

JOHNSON, P. J., and BURMAN, J., concur.