THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* IRVING MADDEN, Defendant-Appellant.

First District (1st Division)    No. 76-449

Opinion filed January 9, 1978.

James D. Montgomery, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger, James Veldman, and Mary Ann Callum, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE GOLDBERG delivered the opinion of the court:

After a jury trial, Irving Madden (defendant) and codefendant Eddie Merritt (not involved in this appeal), were found guilty of rape (Ill. Rev. Stat. 1973, ch. 38, par. 11—1), aggravated kidnapping (Ill. Rev. Stat. 1973, ch. 38, par. 10—2) and armed robbery (Ill. Rev. Stat. 1973, ch. 38, par. 18—2). Defendant was sentenced to 50 to 75 years on each of two charges of rape and on two charges of aggravated kidnapping and 15 to 30 years for armed robbery, all sentences to run concurrently. Defendant appeals.

At approximately 2 a.m. on July 4, 1974, two sisters, Debra, 19 years old, and Vivian, 22, were accosted on a street on the near west side of Chicago by three young men. They identified two of these men as the defendant and the codefendant. The sisters testified that defendant drew a gun and announced a stickup. The testimony of the two sisters conflicted regarding which sister had the gun held to her side. Vivian gave defendant $6 and some jewelry. He told the girls to get into their Volkswagen car. He instructed Debra to drive the group to an empty lot nearby. The third male, unidentified, sat next to Debra. Vivian was in the back seat with defendant and codefendant.

The girls also testified that when they arrived at the empty lot, defendant instructed Debra and Vivian to remove their clothes. The three men had sexual intercourse with the girls. Vivian's statements at the

preliminary hearing and the trial differed regarding the order in which the men had relations with the women. Defendant then directed Debra to continue driving and ordered the car stopped in front of an empty garage in an alley. During this drive he had intercourse with Vivian in the back seat. The girls were instructed to lie down on the garage floor which was covered with broken glass and foliage. Debra protested that she was pregnant. Defendant and the unidentified male then had intercourse with Vivian.

Thereafter defendant left with Vivian so that she could get more money. He instructed the other two men to kill Debra if he and Vivian did not return in half an hour. Debra testified that she had intercourse with the unidentified man and twice with the codefendant. The two men fled when they heard the police approaching and the codefendant was apprehended.

Vivian testified that she obtained $200 from her employer at the rear entrance to his barbershop. She then drove to the street in front of the barbershop and picked up defendant, who had been waiting. He placed a gun to her head, the two began struggling, the gun went off and defendant was wounded. Vivian's employer and some friends dragged defendant from the car into the barbershop and called the police. Two eyewitnesses, who had been driving down the street, testified that they saw several men fire into the Volkswagen car. Police officers testified that they recovered several expended cartridges of different types near the car and the stock of a sawed-off shotgun and shells in the vicinity of the barbershop. An officer testified to the presence of holes in the car made by a large caliber weapon and by a shotgun.

Both Debra and Vivian were examined at a hospital on the morning of July 4, 1974. Neither girl evidenced any cuts or wounds from broken glass or foliage or vaginal trauma. Vivian's pelvic examination did not reveal the presence of semen. Debra's examination did.

Defendant testified that he and his girlfriend, now his wife, had spent the early morning hours of July 4, 1974, in Columbus Park. He left his girlfriend at her home at 2:15 a.m. She corroborated this evidence. Defendant returned to the park where he visited with another girlfriend until 3:45 a.m. He left the park intent upon visiting a third female friend. Vivian hailed him from her car and offered him a ride. He had never seen Vivian before. He got in the car and suddenly several people began firing into the car shouting obscenities at Vivian. He was struck by several bullets and dragged into the barbershop, where he was kicked. He testified that he was subsequently treated for two bullet wounds in the head, five bullet wounds in the arms and all his front teeth had been knocked out. Neither defendant nor his wife had ever met the codefendant. The codefendant testified to the same effect.

Defendant does not contend that the evidence failed to establish his guilt beyond a reasonable doubt. Defendant urges that procedural errors at trial, and lack of overwhelming evidence of guilt, create sufficient basis for reversal. The various contentions of the defendant will be considered in order.

I.

Defendant initially contends that the trial court erred by admitting into evidence a vial and two slides which revealed the presence of semen in Debra. Defendant urges that a sufficient chain of possession was not established linking the vial and slides with those utilized in Debra's hospital examination because there was a possibility of tampering with the lab report and because a 24-hour period between the examination and the laboratory test was not accounted for.

Dr. Morgan, the examining physician, testified that he examined Debra in the emergency room at 5:40 a.m. on July 4, 1974. He took two smears and a vaginal washing and handed them to the nurse on duty. Dr. Morgan also had an independent recollection of Debra as a pregnant rape victim and specifically recalled that her pelvic examination revealed the presence of visible semen in the vaginal vault. The nurse on duty testified that she placed the vial and two slides in a urine specimen bottle and affixed a report thereon with a rubber band. She wrote the time, Debra's name and address, and type of lab test necessary on this lab report. This bottle was picked up by the lab before 7 a.m. on July 4, 1974. The lab technician testified that she first saw the bottle on the morning of July 5, 1974. She wrote Debra's name on the vial and slides, placed them in an envelope and performed the test. She dictated the results to an assistant who typed the information on the lab report. The lab report also revealed a July 5, 1974 time stamp and the name of Dr. Citelik, a gynecologist.

Defendant contends that the addition of Dr. Citelik's name on the lab sheet and the unaccounted for 24-hour period before lab examination suggest tampering with the lab sheet, as well as a possible mix-up of vial and slides. The duty nurse explained the presence of Dr. Citelik's name in that he is a follow-up gynecologist and might have been assigned to the case later. The record neither suggests nor indicates any alterations in the slides, vial, sealed container or its contents.

In establishing a sufficient chain of possession, the prosecution is not required to exclude all possibility of tampering. In the absence of any tangible suggestion of tampering, alteration or substitution, it is sufficient to prove a reasonable probability that the articles have not been changed in any important respect. (*People v. Sansone* (1976), 42 Ill. App. 3d 512, 514, 356 N.E.2d 101; *People v. Richards* (1970), 120 Ill. App. 2d 313, 340, 256 N.E.2d 475, *appeal denied* (1970), 44 Ill. 2d 585.) We cannot conclude

that the addition of a time stamp or physician's name to the lab sheet attached to the specimen bottle is of such magnitude as to break the link between the lab sheet and the original bottle.

■■ The instant factual situation differs from cases in which glaring identification discrepancies required reversal of conviction. (*People v. Maurice* (1964), 31 Ill. 2d 456, 458-59, 202 N.E.2d 480; *People v. Resketo* (1972), 3 Ill. App. 3d 633, 635, 279 N.E.2d 432.) Finally, Dr. Morgan's independent recollection of clearly visible semen in Debra's vagina was testimony sufficient to present a question of credibility for the jury on the issue of recent sexual intercourse by her. *People v. Leemon* (1977), 66 Ill. 2d 170, 173, 361 N.E.2d 573.

## II.

■■ On cross-examination, the assistant State's Attorney asked defendant if he had been kissing his girlfriend in the park and if he had been dating anyone else at the time. Defendant testified on direct examination, as an alibi, that he was with his girlfriend and then with another woman between 2 a.m. and 4 a.m. Therefore, in our opinion, it was permissible for the State to inquire further about defendant's relationships with these women in an effort to explain, qualify, discredit or destroy the alibi. *People v. Mannen* (1977), 46 Ill. App. 3d 61, 63, 360 N.E.2d 563.

■■ The prosecutor also asked defendant how long he had been engaged to his girlfriend. Defendant had also initiated this inquiry into the scope of his acquaintance with the girlfriend by his own alibi testimony. Therefore cross-examination concerning this line of testimony was proper. *People v. Peery* (1976), 41 Ill. App. 3d 533, 536-37, 354 N.E.2d 536, *appeal denied* (1976), 64 Ill. 2d 598; *People v. Allen* (1975), 27 Ill. App. 3d 1054, 1063, 327 N.E.2d 387, *appeal denied* (1975), 60 Ill. 2d 597.

The prosecutor also asked defendant if he was the father of his girlfriend's child, if the woman whom he later met in the park was pregnant with his child, and if he considered himself "a lady's man." Defendant's counsel made timely objections to these questions and the trial court promptly sustained the objections, ordered the questions stricken and instructed the jury to disregard them. Furthermore, the latitude of permissible cross-examination of a defendant in a criminal case is within the sound discretion of the trial court and, absent a clear showing of abuse, this exercise of discretion will not be interfered with by a court of review. *People v. Williams* (1977), 66 Ill. 2d 478, 487, 363 N.E.2d 801; *People v. Blakes* (1976), 63 Ill. 2d 354, 358, 348 N.E.2d 170.

## III.

During the State's case in chief, the defendant's counsel asked Officer

Opiola if codefendant had given him any statements. Officer Opiola acknowledged that the codefendant had given him "some answers." Until this point both State and counsel for defense were unaware of any dialogue between the police and the codefendant. The latter testified in his own behalf one week later. During cross-examination, the prosecutor implied that the codefendant had made a statement to Officer Opiola concerning himself, defendant "* * * and a guy named Bradley—." At that point the court sustained defense counsel's objection to this line of questioning, the prosecutor's comment was stricken from the record and the jury was instructed to disregard it.

Defendant argues that the State failed to comply with Supreme Court Rule 412(a)(ii) (Ill. Rev. Stat. 1975, ch. 110A, par. 412(a)(ii)), requiring the State to furnish to defendant's counsel the substance of statements made by codefendants and a list of witnesses thereto, and section 114—10 of the Code of Criminal Procedure (Ill. Rev. Stat. 1975, ch. 38, par. 114—10), prohibiting the admission of a confession unless the prosecutor was unaware of its existence or could not have become aware of it with due diligence.

Defendant relies upon cases which outline a continuing duty on the part of the prosecution to disclose discoverable material even if such material comes to light just before trial. *People v. Shegog* (1976), 37 Ill. App. 3d 615, 617-18, 346 N.E.2d 208; *People v. Rand* (1975), 29 Ill. App. 3d 873, 876, 331 N.E.2d 15; *People v. Thompson* (1974), 18 Ill. App. 3d 613, 615-16, 310 N.E.2d 504, *appeal denied* (1974), 56 Ill. 2d 590.

██ However, these cases are inapposite. The existence of any dialogue between codefendant and Officer Opiola was not discovered by the prosecution or the defense until cross-examination of Opiola by the defense counsel. There was ample opportunity for the defendant to discover the contents of any alleged statement prior to the testimony of codefendant one week later. The record fails to indicate any request by defense counsel for the content of the alleged statement. Even more important, the substance of the alleged statement was never brought out at trial and any prejudice which might have resulted to the defendant was alleviated by prompt objection by defense counsel to the prosecutor's question and by the action of the court in sustaining this objection.

### IV.

During defendant's cross-examination, the prosecutor inquired, "[H]ave you ever testified before about the events of that night?" This question was withdrawn after objection by defense counsel. The prosecutor then queried if defendant was present at a preliminary hearing and shortly thereafter asked if defendant had "ever testified or told anybody about the story before—." Defense counsel again objected, the

trial court sustained the objection and ordered the question stricken from the record and the jury to disregard it. Finally, during closing argument the prosecutor called the jury's attention to the above portion of the cross-examination by noting that he had asked defendant, "When was the first time that you told this story?" and "Did you ever testify before?" No objection was made to this portion of the closing argument.

■■ The prosecutor withdrew the first question. The prompt action of the trial court in striking the second question from the record prevented any prejudice to defendant. Even if the court's action did not totally eradicate these remarks from the jury's mind, we cannot agree that these questions by themselves were of such magnitude as to prejudice the defendant's case. Unlike *People v. Monaghan* (1976), 40 Ill. App. 3d 322, 352 N.E.2d 295, relied upon by defendant, the prosecutor in the instant case did not directly ask defendant why he failed to relate his alibi story to authorities at specific pretrial stages. Also the record before us does not show a violation of *Miranda* rights and we have here no continued final argument upon this issue as in *Monaghan*, 40 Ill. App. 3d 322, 324-25. (See also *People v. Robinson* (1976), 44 Ill. App. 3d 447, 449, 358 N.E.2d 43; *People v. McClure* (1976), 42 Ill. App. 3d 952, 955, 356 N.E.2d 899.) The prosecutor made no reference to the silence of defendant during a preliminary hearing or at any other specific time. We find no error in this regard.

## V.

■■ During closing argument, the prosecutor accused defense counsel of "blowing smoke" and cautioned that acquittal would constitute "an invitation * * * that they should come to your neighborhood * * * when your daughter goes out on a date and your wife has to go to the store." Since no objection to these remarks was made and the point was not raised in the post-trial motions it is waived. (*People v. Pickett* (1973), 54 Ill. 2d 280, 282, 296 N.E.2d 856; *People v. Dailey* (1972), 51 Ill. 2d 239, 243, 282 N.E.2d 129.) In addition, the State is permitted in closing argument to comment upon the evil results of a crime and its effect upon the community (*People v. Brown* (1959), 16 Ill. 2d 482, 487, 158 N.E.2d 579). Criticism of the statement concerning defense counsel "blowing smoke" has been rejected as to closing arguments when, considering all the evidence including defendant's version of events, any reasonable individual might reach a similar conclusion. *People v. Palmer* (1970), 47 Ill. 2d 289, 299-300, 265 N.E.2d 627, *cert. denied* (1971), 402 U.S. 931, 28 L. Ed. 2d 866, 91 S. Ct. 1532.

The propriety of remarks during closing argument is generally left to the discretion of the trial court. (*People v. Smothers* (1973), 55 Ill. 2d 172, 176, 302 N.E.2d 324; *People v. Carroll* (1977), 49 Ill. App. 3d 387, 395, 364

N.E.2d 408.) Also, upon this entire record, we cannot find that this argument resulted in "substantial prejudice" to defendant. *People v. Mackins* (1974), 17 Ill. App. 3d 24, 47, 308 N.E.2d 92, *cert. denied* (1975), 419 U.S. 1111, 42 L. Ed. 2d 808, 95 S. Ct. 786; *People v. Nilsson* (1970), 44 Ill. 2d 244, 248, 255 N.E.2d 432, *cert. denied* (1970), 398 U.S. 954, 26 L. Ed. 2d 296, 90 S. Ct. 1881.

In summary, we fail to find substantial error in defendant's various contentions, when considered either individually or collectively, which would warrant reversal of the jury verdict in light of the evidence presented. The two sisters positively identified the defendant placing him at the scene of the armed robbery, kidnapping and rapes. The independent recollection of Dr. Morgan revealed the presence of semen within Debra directly following the alleged rapes. The conflicts in the testimonies of the two sisters were not of such magnitude as to rise above simple issues of credibility. While it is undisputed that defendant sustained additional bullet wounds and facial injury, unexplained by Vivian's recollection of events outside the barbershop, these factors do not negate the strong evidence of guilt as above summarized. All of these events, whatever their significance, occurred after commission of the crimes here involved.

## VI.

The final issue is the concurrent sentences of 50 to 75 years for rape and aggravated kidnapping and 15 to 30 years for armed robbery. The Fourth Division of this court reviewed the conviction of the codefendant and filed its opinion on October 6, 1977. (*People v. Merritt* (1977), 53 Ill. App. 3d 929, 369 N.E.2d 113.) The only point raised in this appeal by the codefendant was severity of the sentences; which were the same as in the case before us. The opinion of this court carefully reviewed the applicable legal principles and concluded that the sentences were excessive. The court accordingly reduced the sentences for rape and aggravated kidnapping to 15 to 45 years and the armed robbery sentence to 10 to 20 years.

It is correct that the degree of activity or participation in a crime should receive attention in passing sentence. (*People v. Morris* (1969), 43 Ill. 2d 124, 131, 251 N.E.2d 202.) We cannot say from the evidence before us that defendant was more culpable or that his participation in the crime exceeded that of codefendant. It is true that defendant exhibited a pistol to the complaining witnesses, or at least one of them, and threatened them with it. However, by his participation in the crime and by the repeated rape of one of the young women, the codefendant showed himself to be equally culpable. In the interest of fundamental fairness, courts have always attempted to attain even-handed justice by avoiding disparity of

116

sentences, particularly for participation in the same crime. *People v. Krueger* (1974), 21 Ill. App. 3d 1084, 1085-86, 316 N.E.2d 189; *People v. Jones* (1969), 118 Ill. App. 2d 189, 197-98, 254 N.E.2d 843.

The defendant has a criminal record of having been found guilty of burglary in Georgia during 1970, when 17 years of age. He was admitted to 5 years probation for this offense. In 1972, he was found guilty of battery and placed on probation for 6 months. In our opinion, this type of background does not warrant the sharp disparity between the sentences of the codefendant, as modified, and the sentences of defendant, nor does it justify the sentences of defendant.

■■ In view of all of these factors, we will modify the judgments herein by reducing each of the sentences of defendant for rape and aggravated kidnapping to 15 to 45 years and reducing the sentence for armed robbery to 10 to 20 years, all to run concurrently. As thus modified, the judgment is affirmed.

Judgment affirmed.

McGLOON and O'CONNOR, JJ., concur.