THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* SHEILA MARTIN, Defendant-Appellant.

Third District    No. 80-339

Opinion filed July 30, 1981.

Robert Agostinelli, of State Appellate Defender's Office, of Ottawa, for appellant.

John A. Barra, State's Attorney, of Peoria (John X. Breslin and Kenneth A. Wilhelm, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE BARRY delivered the opinion of the court:

Following a jury trial, the defendant, Sheila Martin, was found guilty of murder and not guilty of voluntary manslaughter. She was sentenced to a term of 20 years' imprisonment.

Two issues are raised on appeal: (1) whether the State failed to prove beyond a reasonable doubt that the defendant was not justified in using deadly force in self-defense; and (2) whether the State failed to prove the defendant guilty of murder beyond a reasonable doubt where circumstances existed at the time of the killing which caused her to believe, unreasonably, that she was justified in killing the victim. We affirm.

The State's case in chief was presented by three occurrence witnesses: Phyllis Taylor, Christine Tyler, and Jennell Nelson, all prostitutes. In the early morning hours of February 11, 1980, the three women were talking together outside the Slipper Club in Peoria, Illinois, when they were joined by Ronald Fortune, the murder victim.

About 1 a.m. the defendant, her sister-in-law, Antoinette Washington, and a man named Ray Miller left the Slipper Club where they had been drinking. What then transpired was described by the three State witnesses, whose accounts varied only slightly.

According to their testimony, Fortune noticed Miller kick the defendant from behind. Fortune then confronted Ms. Washington and the defendant and asked them if Miller, "the white guy," had kicked the defendant. Profanities were then exchanged between the defendant and Fortune. In addition, one of the prostitutes remarked: "As cold as it is out

here and I'm trying to sell all the pussy I can and this bitch is out here giving it away for free."

A few minutes later, the defendant and Ms. Washington walked away toward their car, followed by the three prostitutes.

For the defense, both the defendant and Ms. Washington testified that Fortune had threatened the defendant during their brief discussion. State's witnesses Christine Tyler and Jennell Nelson expressly testified that there was no such threat, while the third State's witness, Phyllis Taylor, testified that she could not recall hearing any threat.

The three prostitutes did not walk up to the defendant's car but only watched from a corner as the defendant and Ms. Washington entered the car. By the time the three returned to the front of the Slipper Club, the defendant was slowly approaching in her car. It is noteworthy that an alternative route was available to the defendant which would have taken her away from the Slipper Club. Instead she chose to deliberately and slowly approach the club in her car.

When in front of the club, the defendant yelled, "Where's the punk motherfucker at?" according to the testimony of the three occurrence witnesses. This question was repeated a second time. The defendant and Ms. Washington testified that the defendant asked only "Where's the punk?"

Ronald Fortune exited from the Slipper Club after the defendant repeated her question a second time. According to the testimony of Ms. Taylor, Fortune was running as he approached the defendant's car. Ms. Tyler and Ms. Nelson testified that the defendant was walking. However, all three witnesses saw the defendant produce a gun and shoot Fortune. Ms. Tyler and Ms. Nelson testified that they yelled for Fortune to "duck" as they saw the defendant reach on the car seat and produce a gun.

The version of the shooting related by the defendant and Ms. Washington was in marked contrast to that given above. The defendant testified that Fortune came running towards her car and thrust the upper half of his body through her open car window, saying "[b]itch, I told you, I'm going to kill you." In further testimony, the defendant stated she feared for her life and, as she struggled with Fortune, she opened the glove compartment located on the car's right side, grabbed a gun, and shot Fortune. The defendant testified that she was in a state of shock following the shooting and that she drove away from the scene unaware of what eventually happened to the gun.

The testimony of Ms. Washington corroborated that of the defendant. Both testified that as Fortune approached the car, he had one hand behind his back, which caused them to fear for their lives. However, the testimony of Ms. Washington was substantially impeached by the intro-

duction of statements she had earlier made to the police or given to the grand jury. In a written statement to the police, Ms. Washington stated that Fortune's hands were clearly in view, out of his pockets, and that the defendant had the gun in her hand as Fortune approached the car.

Testimony by the defendant's husband established that the .38-caliber handgun used to kill the victim was a properly registered weapon kept in their house for the defendant's protection since she was alone a great deal.

Dr. Philip Immesoete testified that the path of the bullet which killed Fortune was "slightly downhill." The defendant claims this testimony indicates that Fortune was shot while leaning over her. The path of the bullet could just as easily have been made, however, while Fortune was attempting to "duck," as the three State's eyewitnesses yelled at him to do.

The defendant attempted to portray damage to an armrest and door handle in her car as evidence of Fortune's struggle with her inside the car. However, there was insufficient evidence to link Fortune with any damage that may have been done. Although the defendant's husband testified that the items were loose and that he removed them, he did not file a damage report with the police or his insurance company. The car was impounded at Harvey's Towing and was not seen for two or three weeks after the shooting incident.

■■ Based on the evidence presented, the defendant claims that the State failed to prove beyond a reasonable doubt that she was not justified in using deadly force in self-defense. Simply put, the defendant attempts to characterize the situation as a life threatening one in which she struggled with and shot Ronald Fortune in self-defense. We cannot agree. The issue of self-defense, which may include the use of force which is intended or likely to cause death or great bodily harm pursuant to the statutory definition found in section 7—1 of the Criminal Code of 1961 (Ill. Rev. Stat. 1979, ch. 38, par. 7—1), is clearly a question to be resolved by the trier of fact. (*People v. Tirrell* (1980), 87 Ill. App. 3d 511, 408 N.E.2d 1202.) The determination of the fact finder on that issue will not be disturbed unless the evidence is so palpably contrary to the jury's verdict or so unreasonable, improbable, or unsatisfactory as to raise a reasonable doubt of the defendant's guilt. *People v. Clemens* (1972), 9 Ill. App. 3d 312, 292 N.E.2d 232.

■■ In the case at bar, the issue of self-defense was squarely placed before the jury. The State presented the testimony of three eyewitnesses, each of whom, with only slight discrepancies, testified that the defendant deliberately shot Ronald Fortune, while the unarmed victim approached the defendant's car. Defense testimony concerning the shooting contrasted sharply with that of the State. However, the defense testimony was also inconsistent, improbable, and subject to impeachment. Such exculpatory

testimony need not be believed by the trier of fact. (*People v. Tirrell* (1980), 87 Ill. App. 3d 511, 408 N.E.2d 1202.) From a careful review of the evidence, we conclude that the jury's finding on the issue of self-defense is clearly supported by the record.

Voluntary manslaughter is defined by statute as follows:

"(b) A person who intentionally or knowingly kills an individual commits voluntary manslaughter if at the time of the killing he believes the circumstances to be such that, if they existed, would justify or exonerate the killing under the principles stated in Article 7 of this Code, but his belief is unreasonable." (Ill. Rev. Stat. 1979, ch. 38, par. 9—2(b).)

The principles stated in article 7 are as follows:

"Use of Force in Defense of Person. A person is justified in the use of force against another when and to the extent that he reasonably believes that such conduct is necessary to defend himself or another against such other's imminent use of unlawful force. However, he is justified in the use of force which is intended or likely to cause death or great bodily harm only if he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or another, or the commission of a forcible felony." (Ill. Rev. Stat. 1979, ch. 38, par. 7—1.)

In applying these provisions to a given situation, it is the defendant's state of mind at the time that is critical. *People v. Johnson* (1972), 4 Ill. App. 3d 249, 280 N.E.2d 764.

■■ It is the defendant's contention in the present case that her testimony, coupled with that of her sister-in-law, clearly established her belief that her life was in imminent danger and that her actions were accordingly justified, even though her belief was unreasonable. As with the issue of self-defense, the question of whether to find a defendant guilty of murder or voluntary manslaughter, when all the evidence is in and proper instructions have been tendered, is for the trier of fact to resolve. Here, the jury's specific findings of guilty of murder and not guilty of voluntary manslaughter indicate that they considered the evidence and reached the conclusion that no circumstances existed which would have allowed the defendant to believe, even unreasonably, that she was justified in killing Fortune. See *People v. Tirrell* (1980), 87 Ill. App. 3d 511, 408 N.E.2d 1202, and *People v. Peery* (1976), 41 Ill. App. 3d 533, 354 N.E.2d 536.

■■■ We find the jury's determination supported by the evidence. It is evident that the defendant intended to confront Fortune, since she drove slowly to the front entrance of the Slipper Club rather than drive her car away from the area. The defendant's account of how that confrontation resulted in the murder of Fortune is highly improbable and filled with inconsistencies. The State's account of the shooting, while not free of

discrepancies and bias, is believable. As this court stated in *People v. Hunt* (1979), 75 Ill. App. 3d 1023, 394 N.E.2d 759, where most of the witnesses in a case are not free from bias or prejudice, a reviewing court should be "ever so reluctant" to disturb the judgment of the lower court where the decision was based, in part, on the observation of the demeanor and attitude of the witnesses.

For the foregoing reasons, we affirm the judgment of the Circuit Court of Peoria County.

Affirmed.

SCOTT, P. J., and HEIPLE, J., concur.